**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
_____

No. 23-2550
_____

**UNITED STATES OF AMERICA,**
**Appellee,**

**v.**

**KENDRA KINGSBURY**
**Appellant.**
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**APPELLANT'S BRIEF**
_____

LAINE CARDARELLA
Federal Public Defender
Western District of Missouri

Daniel P. Goldberg
Appellate Attorney
1000 Walnut, Suite 600
Kansas City, MO 64106
(816) 471-8282

COUNSEL FOR APPELLANT

## SUMMARY OF THE CASE

Kendra Kingsbury pled guilty to two counts of willful retention of national defense information pursuant to 18 U.S.C. § 793(e), after bringing home top-secret documents she had access to while working at the Federal Bureau of Investigation.

The district court plainly erred in applying a two-level enhancement based on U.S.S.G. § 3B1.3, even though Ms. Kingsbury "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Applying § 3B1.3 was error, however, because "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.*

Ms. Kingsbury's crimes would have been impossible to commit without breaching the FBI's trust in her to have access to our nation's most top-secret documents. Because the abuse of that trust was so central to Ms. Kingsbury's crimes that the abuse was included in the base offense level, the district court erred in applying the enhancement. Indeed, it would be futile to argue that this abuse of trust was only tangential, or that she could have committed her crimes without it.

The district court's error in applying § 3B1.3. satisfies the plain error test because the error is plain, affects her substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Ms. Kingsbury requests fifteen minutes for oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................. i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ............................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE ............................................................2

STATEMENT OF THE CASE .............................................................3

    **I.   The scope and nature of Ms. Kingsbury's criminal conduct.**..............3

    **II.   The sentencing hearing** ...................................................5

SUMMARY OF THE ARGUMENT ......................................................6

ARGUMENT ..................................................................................8

   **Did the district court plainly err by increasing Ms. Kingsbury's offense level by two levels under U.S.S.G. § 3B1.3 because her abuse of trust was so central to her crimes that it was included in the base offense level?** .............8

    **I.   Standard of Review** .......................................................8

    **II.   Why the district court erred in calculating the Guidelines.**................8

    **III.  This error constituted plain error, warranting reversal.**...................15

CONCLUSION ..............................................................................18

CERTIFICATE OF COMPLIANCE ......................................................19

Appellate Case: 23-2550    Page: 3    Date Filed: 08/31/2023 Entry ID: 5312247

# TABLE OF AUTHORITIES

## Cases

*Barber v. Thomas*, 560 U.S. 474, 504 (2010)..........................................................17

*Glover v. United States*, 531 U.S. 198 (2001) .........................................................17

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) ........................... 7, 15, 17

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) .....................................18

*United States v. Baker*, 82 F.3d 273 (8th Cir. 1996) ...................................... passim

*United States v. Claymore*, 978 F.2d 421 (8th Cir. 1992) ............................... passim

*United States v. Harris*, 908 F.3d 1151 (8th Cir. 2018) .................................. 15, 17

*United States v. Jenkins*, 854 F.3d 181 (C.A.2 2017)..............................................17

*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990)..........................................2, 9

*United States v. Miranda-Zarco*, 836 F.3d 899 (8th Cir. 2016) ..........................8, 16

*United States v. Natysin*, 966 F.3d 738 (8th Cir. 2020).......................................8, 10

*United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998)................................. 13, 14

*United States v. Poitra*, 60 F.4th 1098 (8th Cir. 2023)...........................................16

*United States v. Wadena*, 152 F.3d 831 (8th Cir. 1998)...........................................9

*United States v. Waldner*, 580 F.3d 669 (8th Cir. 2009) ........................................14

*United States v. Williams*, 899 F.3d 659 (8th Cir. 2018).........................................8

*United States v. Wilson*, 184 F.3d 798 (8th Cir. 1999)............................................8

## Statutes

18 U.S.C. § 793 ..................................................................................... passim

18 U.S.C. § 1952 .............................................................................................13

Appellate Case: 23-2550    Page: 4    Date Filed: 08/31/2023 Entry ID: 5312247

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 3553 .........................................................................................14

28 U.S.C. § 1291 ...........................................................................................1

Mo. Rev. Stat. § 571.015 ...........................................................................16

**Miscellaneous**

T. Tyler, Why People Obey the Law 164 (2006) ......................................18

**Rules**

Fed. R. Crim. P. 52.....................................................................................18

**Guidelines**

U.S.S.G. § 2C1.1 ........................................................................................13

U.S.S.G. § 2J1.2 ........................................................................................13

U.S.S.G. § 2M3.3 .........................................................................................8

U.S.S.G. § 3B1.3 ............................................................................... passim

iv

# JURISDICTIONAL STATEMENT

On October 13, 2022, Ms. Kingsbury pled guilty to two counts of willful retention of national defense information pursuant to 18 U.S.C. § 793(e). R. Doc 41, at 1. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, as Ms. Kingsbury was charged with an offense against the United States. On June 21, 2023, the district court sentenced Ms. Kingsbury to 46 months' imprisonment. R. Doc 41, at 2. The district court issued its judgment on June 21, 2023, which is a final and appealable order. R. Doc 41, at 1. On June 29, 2023, Ms. Kingsbury filed a timely notice of appeal. R. Doc 44. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over appeals from all final decisions of district courts of the United States.

Appellate Case: 23-2550    Page: 6    Date Filed: 08/31/2023 Entry ID: 5312247

## STATEMENT OF THE ISSUE

**Did the district court plainly err by increasing Ms. Kingsbury's offense level by two levels under U.S.S.G. § 3B1.3 because her abuse of trust was so central to her crimes that it was included in the base offense level?**

*United States v. Baker*, 82 F.3d 273 (8th Cir. 1996);

*United States v. Claymore*, 978 F.2d 421 (8th Cir. 1992);

*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990);

United States Sentencing Guidelines, Section 3B1.3

2

## STATEMENT OF THE CASE

On October 13, 2022, Ms. Kingsbury pled guilty to two counts of willful retention of national defense information pursuant to 18 U.S.C. § 793(e). R. Doc 41, at 1. In pleading guilty to those two crimes, Ms. Kingsbury admitted that she committed the criminal acts, as alleged in the Indictment. *See* Plea Tr., 8-15.

### I.    The scope and nature of Ms. Kingsbury's criminal conduct.

Ms. Kingsbury was an "Intelligence Analyst" for the Federal Bureau of Investigation ("FBI") from 2004 to 2017. R. Doc. 1, 1. For over thirteen years, Ms. Kingsbury worked on "squads" that did critical work regarding "illegal drug trafficking, violent crime, violent gangs, and counterintelligence." *Id*. Ms. Kingsbury's role at the FBI was helping to fulfil its mission "to protect the American people and uphold the Constitution of the United States." R. Doc. 1, at 3. This specifically included "protecting the United States from terrorist attacks; protecting the United States against foreign intelligence operations and espionage; and protecting the United States against cyber-based attacks and high technology crimes." *Id*.

Because of her position of trust in her employment with the FBI, Ms. Kingsbury "held a TOP SECRET//SCI security clearance and had access to national defense and classified information." R. Doc. 1, at 1. In her role of public trust, "[o]ver her many years of FBI employment holding a TOP SECRET//SCI

3

security clearance", Ms. Kingsbury "received training regarding classified information", which included "the proper handling, marking, transportation, and storage of classified materials." R. Doc. 1, at 3-4.

Specifically, the FBI entrusted Ms. Kingsbury with "TOP SECRET" information that "reasonably could be expected to cause exceptionally grave damage to the national security" of our Nation if disclosed to the public. R. Doc. 1, at 2. "Because [Ms. Kingsbury] held a security clearance, had received training regarding the protection of classified information, and was employed by the FBI as an Intelligence Analyst, the U.S. government entrusted the defendant with access to sensitive government materials, including information relating to the national defense." R. Doc. 1, 4. "The defendant had access to these sensitive government materials at a secure area of the FBI's Kansas City Division and otherwise through secure government computer systems and programs." *Id*.

It was undisputed "the defendant improperly removed and unlawfully and willfully retained, in her personal residence, sensitive government materials, including National Defense Information and classified documents." *Id*. Those documents included ones "that described intelligence sources and methods related to U.S. government efforts to defend against counterterrorism, counterintelligence, and cyber threats." R. Doc. 1, at 5. These documents were of the utmost importance because they related "to sensitive human source operations in national

4

security investigations, intelligence gaps regarding hostile foreign intelligence services and terrorist organizations." R. Doc. 1, at 5. Indeed, some of the documents Ms. Kingsbury retained pertained to "al Qaeda", "including a suspected associate of Usama bin Laden." R. Doc. 1, at 6.

## II.      The sentencing hearing

At the sentencing hearing, the parties made no objections to the Pre-Sentence Report's ("PSR") calculation of the Guidelines. Sent Tr. at 3-4. Thus, the district court adopted the PSR's calculations, which concluded Ms. Kingsbury's Guidelines range was 46 to 57 months' imprisonment. *Id.*; *see also* PSR, at par. 73.

Prior to announcing its sentence, the district court made numerous findings and conclusions. Sent Tr. 64-69. Specifically, the court stated that it had reviewed the specific documents Ms. Kingsbury improperly took home, and the court concluded "[i]t was all information that is designed to protect our country from terrorism." Sent Tr., at 65. Specifically, the court concluded that Ms. Kingsbury "pled guilty to taking home documents that shouldn't ever be outside the FBI." Sent Tr. at 67. Finally, the court found that because of her guilty plea, "I don't think you're ever going to be in possession of a secret document ever again, and so we don't have any thought that you're ever going to do this again." Sent Tr. at 68.

The district court ultimately sentenced Ms. Kingsbury to 46 months' imprisonment, which was the low end of her Guidelines range. Sent Tr. 68.

Appellate Case: 23-2550    Page: 10    Date Filed: 08/31/2023 Entry ID: 5312247

## SUMMARY OF THE ARGUMENT

Ms. Kingsbury seeks a new sentencing hearing on appeal because the district court incorrectly calculated her Guidelines range. Specifically, the district court plainly erred in applying a two-level enhancement based on U.S.S.G. § 3B1.3, even though Ms. Kingsbury "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." *Id*. Applying § 3B1.3 was error, however, because "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id*.

Ms. Kingsbury's crimes would have been impossible to commit without breaching the FBI's trust and faith in her to have access to our nation's most top-secret documents. Because the abuse of that trust was so central to her crimes, the district court plainly erred in applying the two-level enhancement. Indeed, it would be futile to argue to the contrary, that this abuse of trust was somehow only tangential to her crimes, or that without this abuse of trust she could have committed these crimes.

The district court's error in applying § 3B1.3. satisfies the plain error test because the error is plain, affects her substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's

6

ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016).

For over thirty years, this Court has flagged the relevant test for the application of § 3B1.3, based on the plain text of that Guideline, which clearly and obviously says "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id*. These are the authorities entitling Ms. Kingsbury to plain error relief.

After correcting this error, Ms. Kingsbury's Guidelines range drops from 46 to 57 months' imprisonment to 37 to 46 months' imprisonment. This is a significant error, one compounded by the fact that the district court did not expressly state it would have alternatively imposed the same sentence even if a lower guideline range applied. Rather, because Ms. Kingsbury was sentenced to the low end of her Guidelines range (46 months' imprisonment), this error must be corrected because it is likely that she would be sentenced to the low end of the Guidelines again, 37 months' imprisonment. Thus, the error affected Ms. Kingsbury's substantial rights.

Appellate Case: 23-2550     Page: 12     Date Filed: 08/31/2023 Entry ID: 5312247

**ARGUMENT**

**Did the district court plainly err by increasing Ms. Kingsbury's offense level by two levels under U.S.S.G. § 3B1.3 because her abuse of trust was so central to her crimes that it was included in the base offense level?**

## I.     Standard of Review

This Court typically reviews de novo the district court's application of the Guidelines. *United States v. Williams*, 899 F.3d 659, 662 (8th Cir. 2018); *see also United States v. Natysin*, 966 F.3d 738, 739 (8th Cir. 2020) ("We review the legal component of the abuse of trust determination [in applying U.S.S.G. § 3B1.3] de novo and the district court's factual findings for clear error.").

But when a Guidelines objection is not raised before the district court, this Court reviews for plain error. *Williams*, 899 F.3d at 666, citing *United States v. Wilson*, 184 F.3d 798, 800 (8th Cir. 1999). Under plain error review, the defendant "must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights . . . [and] (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Miranda-Zarco*, 836 F.3d 899, 902 (8th Cir. 2016).

## II.     Why the district court erred in calculating the Guidelines.

It was undisputed below that Ms. Kingsbury's base offense level was 24 under U.S.S.G. § 2M3.3(a)(2), pursuant to her guilty plea to willful retention of national defense information under 18 U.S.C. § 793(e). PSR, paragraph 29.

8

However, the district court plainly erred in applying a two-level enhancement based on U.S.S.G. § 3B1.3, even though the "defendant abused a position of private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." PSR, paragraph 32.

U.S.S.G. § 3B1.3 states that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." *Id*. But the Guideline also states "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id*.

For over thirty years, this Court has interpreted this limiting provision of § 3B1.3 to mean "[i]f an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." *United States v. Claymore*, 978 F.2d 421, 423 (8th Cir. 1992), citing *United States v. Lange*, 918 F.2d 707, 708-09 (8th Cir. 1990); *see also United States v. Baker*, 82 F.3d 273, 277 (8th Cir. 1996) (setting forth same test). Thus, "§ 3B1.3 should not be applied" when "the Guidelines took into consideration the fact that [the base offense level] necessarily involved abuse of positions of trust." *United States v. Wadena*, 152 F.3d 831, 856, fn 32 (8th Cir. 1998).

Ms. Kingsbury does not dispute she "occupied a position of public or private trust, and [she] used the position 'in a manner that significantly facilitated the

9

commission or concealment of the offense.'" *Natysin,* 966 F.3d at 739, quoting U.S.S.G. § 3B1.3. But the lower court plainly erred in applying the two-level enhancement because the plain text of the Guidelines provides "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.*

Such is the case here because "the abuse of trust" was "so central to the crime that the abuse would be included in the base offense level." *Claymore*, 978 F.2d at 423; *Baker*, 82 F.3d at 277. Reviewing the Indictment and plea transcript demonstrates how inextricably interwoven and central the abuse of trust was to Ms. Kingsbury's crimes of willful retention of national defense information under 18 U.S.C. § 793(e).

Specifically, Ms. Kingsbury was an "Intelligence Analyst" for the FBI for approximately 13 years. R. Doc. 1, 1. Ms. Kingsbury worked on "squads" that did critical work regarding "illegal drug trafficking, violent crime, violent gangs, and counterintelligence." *Id*. Ms. Kingsbury's role was to help fulfil the FBI's mission "to protect the American people and uphold the Constitution of the United States." R. Doc. 1, at 3. This specifically included "protecting the United States from terrorist attacks; protecting the United States against foreign intelligence operations and espionage; and protecting the United States against cyber-based attacks and high technology crimes." *Id*.

10

Because of her position of trust in her employment with the FBI, Ms. Kingsbury "held a TOP SECRET//SCI security clearance and had access to national defense and classified information." R. Doc. 1, at 1. In her role of public trust, and "[o]ver her many years of FBI employment holding a TOP SECRET//SCI security clearance", Ms. Kingsbury "received training regarding classified information", which included "the proper handling, marking, transportation, and storage of classified materials." R. Doc. 1, at 3-4.

Specifically, the FBI entrusted Ms. Kingsbury to such "TOP SECRET" information that "reasonably could be expected to cause exceptionally grave damage to the national security" of our Nation if disclosed to the public. R. Doc. 1, at 2. Ms. Kingsbury's position of trust was important, it was undisputed, because this was the only way she had access to this "TOP SECRET" information. *Id*. "Because [Ms. Kingsbury] held a security clearance, had received training regarding the protection of classified information, and was employed by the FBI as an Intelligence Analyst, the U.S. government entrusted the defendant with access to sensitive government materials, including information relating to the national defense." R. Doc. 1, 4.

The key to Ms. Kingsbury's crimes was that she abused her position of trust: "the defendant improperly removed and unlawfully and willfully retained, in her

11

personal residence, sensitive government materials, including National Defense Information and classified documents." R. Doc. 1, at 4.

Based on these undisputed facts, it was error to apply the two-level enhancement of U.S.S.G. § 3B1.3, because "the abuse of trust" was "so central to the crime that the abuse would be included in the base offense level." *Claymore*, 978 F.2d at 423; *Baker*, 82 F.3d at 277. Indeed, it would be futile to argue to the contrary, that this abuse of trust was somehow only tangential to her crimes, or that without this abuse of trust Ms. Kingsbury could have committed her crimes.

This Court previously held that the district court erred in imposing the two-level enhancement of U.S.S.G. § 3B1.3 in *United States v. Baker*, 82 F.3d 273 (8th Cir. 1996). In *Baker*, the defendant, a St. Louis police officer, was convicted of extorting money from a motorist by pulling him over, arresting him, and demanding the motorist pay him money (which he did). *Id*. at 274-5.

While defendant's conduct in *Baker* "was a most egregious abuse of public trust", this Court vacated the two-level enhancement because "§ 3B1.3 provides that the abuse of trust enhancement should not be applied 'if an abuse of trust or skill is included in the base offense level or specific offense characteristic.'" *Id*. at 278. *Baker* focused its analysis on the specific offense characteristics, not the base offense level. Specifically, this Court emphasized that "if an abuse of trust or skill

12

is included in the base offense level *or specific offense characteristic*", it was error to apply the enhancement. *Id.*, quoting § 3B1.3. (emphasis by *Baker* panel).[1]

In *Baker*, this Court properly focused on the specific offense characteristic, and not the base offense level, because the defendant's crime of violating the Travel Act, 18 U.S.C. § 1952(a) did not inherently involve or encompass an abuse of trust. *Id*. The broad applicability of the Travel Act enables federal prosecution of a wide range of interstate criminal activities, including "carrying on, of *any* unlawful activity." § 1952(a) (emphasis added).

As highlighted above, Ms. Kingsbury's offense involved a breach of public trust that would have been impossible without the FBI's trust and faith in her to have access to our nation's most top-secret documents. *See also* Plea Tr, at 8-15; *see also* § 793(e) (criminalizing conduct "relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States"). Thus, this case stands in contrast to those where any "secretary or other employee" had similar access to the same information that was the subject of the federal crime. *See United States v. O'Hagan*, 139 F.3d 641, 656 (8th Cir. 1998)

---

[1] In so holding, this Court turned to the "interplay between" the applicable extortion base offense level, 2C1.1 and § 3B1.3, which was addressed by Application Note 3 to § 2C1.1." *Id*. at 278. This analysis also involved by implication § 2J1.2(b)(2). *Id*. at 278. After reviewing the interplay of those Guidelines provisions, *Baker* concluded that the issue "comes down to whether there is double counting." *Id*.

Appellate Case: 23-2550     Page: 18     Date Filed: 08/31/2023 Entry ID: 5312247

(two level enhancement under § 3B1.3 was proper because partner at law firm abused position of trust that was not "already included in the offense of securities fraud itself under the misappropriation theory" because other employees could have committed same crime "without abusing a position of special trust"); *see also United States v. Waldner*, 580 F.3d 669, 708 (8th Cir. 2009) (enhancement under § 3B1.3 proper because defendant CEO's false statement in bankruptcy proceedings was an abuse of trust of creditors "who were entitled to rely on his representations to the creditors meetings", which was distinct from "general prohibition on perjury that seeks to protect the integrity and dignity of government proceedings").

Put simply, in contrast to cases like *O'Hagan* and *Waldner*, the very nature of Ms. Kingsbury's crimes involved a breach of the FBI's trust in granting her security clearance. And that breach of trust cannot meaningfully be divorced from her crimes.

In sentencing Ms. Kingsbury, the district court made detailed findings and conclusions regarding the sentencing factors of 18 U.S.C. § 3553, which are illuminating to this analysis of § 3B1.3. Specifically, after reviewing the particular documents Ms. Kingsbury improperly brought home, the district court concluded "[i]t was all information that is designed to protect our country from terrorism." Sent Tr., at 65. The court further concluded that Ms. Kingsbury "pled guilty to taking home documents that shouldn't ever be outside the FBI." Sent Tr. at 67.

14

Finally, the court found that because of her guilty plea, "You're never going to be within 100 yards of a secret document again, and so we don't have any thought that you're even going to do this again." Sent Tr. at 68.

Based on the district court's own findings and conclusions regarding the nature of Ms. Kingsbury's offense, it is hard to imagine the court would have found Kingsbury's abuse of trust in her position with the FBI was tangential, or only constituted a part of her crimes. Rather, the court strongly indicated "the abuse of trust" was "so central to the crime that the abuse would be included in the base offense level." *Claymore*, 978 F.2d at 423; *Baker*, 82 F.3d at 277. Thus, the lower court erred in applying the two-level enhancement of § 3B1.3.

### III.    This error constituted plain error, warranting reversal.

"When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *United States v. Harris*, 908 F.3d 1151, 1155 (8th Cir. 2018), quoting *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016) (reversing and remanding for a new sentencing hearing based on Guidelines miscalculation because district court "did not expressly state that it would have alternatively imposed the same sentence even if a lower guideline range applied").

15

The district court's error in applying the two-level enhancement of § 3B1.3. satisfies the plain error test because the error is plain, affects her substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Miranda-Zarco*, 836 F.3d at 902. In *Miranda-Zarco*, this Court reversed and remanded for a new sentencing hearing for the district court to determine whether Missouri armed criminal action, § 571.015 RSMo, was a "crime of violence" under the Guidelines. *Id.* at 901-02. This Court reached this holding on plain error review, even though the issue was an open question in the Eighth Circuit at time, and even though appellate counsel failed to raise the issue on appeal. *Id.*

The same plain error relief should be afforded to Ms. Kingsbury. For over thirty years, this Court has flagged the relevant test for the application of § 3B1.3, based on the plain text of that Guideline, which clearly and obviously says "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.* Indeed, this Court has vacated a defendant's sentence based on a similar type of error in the application of § 3B1.3. *Baker*, 82 F.3d at 277. These are they authorities that directly support Ms. Kingsbury's position, entitling her to plain error relief. *See United States v. Poitra*, 60 F.4th 1098, 1101 (8th Cir. 2023).

After correcting this error, Ms. Kingsbury's Guidelines range drops from 46 to 57 months' imprisonment to 37 to 46 months' imprisonment, because it reduces her offense level from 23 to 21. *See* Sent Tr. at 4; *see also* PSR, at paragraph 73. This is a significant and drastic error, one compounded by the fact that the district court "did not expressly state that it would have alternatively imposed the same sentence even if a lower guideline range applied." *Harris*, 908 F.3d at 1155.

Rather, because Ms. Kingsbury was sentenced to the low end of that Guidelines range (46 months' imprisonment), this error must be corrected because it is likely that she would be sentenced to the low end of the Guidelines again, 37 months' imprisonment. Thus, the error affected Ms. Kingsbury's substantial rights. "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez*, 578 U.S. at 200.

The Supreme Court further highlighted why Ms. Kingsbury is entitled to plain error relief:

> To a prisoner," this prospect of additional "time behind bars is not some theoretical or mathematical concept." *Barber v. Thomas,* 560 U.S. 474, 504, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) (KENNEDY, J., dissenting). "[A]ny amount of actual jail time" is significant, *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and "ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration," *United States v. Jenkins,* 854 F.3d 181, 192 (C.A.2 2017). The possibility of additional jail time thus warrants serious consideration in a determination whether to exercise

17

discretion under Rule 52(b). It is crucial in maintaining public perception of fairness and integrity in the justice system that courts exhibit regard for fundamental rights and respect for prisoners "as people." T. Tyler, Why People Obey the Law 164 (2006).

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018).

For all these reasons, the error here in failing to properly calculate Ms. Kingsbury's Guidelines range constituted plain error, and therefore this matter should be remanded for a resentencing hearing.

## CONCLUSION

Because the district court erred in sentencing Ms. Kingsbury for the aforementioned reasons, it is respectfully submitted that this matter must be reversed and remanded for a new sentencing hearing.

Respectfully submitted,

s/Daniel P. Goldberg
Daniel P. Goldberg
1000 Walnut, Suite 600
Kansas City, MO 64106
(816) 471-8282

ATTORNEY FOR APPELLANT

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,858 words. I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 version 16, Times New Roman Font Face in Font size 14. Trend Micro Apex One Security Agent version 14 virus auto protection is enabled on all workstations to ensure all files are virus free.

s/Daniel P. Goldberg
Daniel P. Goldberg

## CERTIFICATE OF SERVICE

It is hereby CERTIFIED that on this 31st day of August, 2023 the foregoing was electronically submitted with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

I hereby certify that one copy of the appellant's brief and addendum were mailed on this _____ day of _____ to:

Patrick Edwards
Assistant United States Attorney
400 E. 9th Street, 5th floor
Kansas City, MO 64108

David Raskin
Assistant United States Attorney
400 E. 9th Street, 5th floor
Kansas City, MO 64106

Kendra Kingsbury, 36510-509
FCI Aliceville
PO Box 4000
Aliceville, AL 35442

s/Daniel P. Goldberg
Daniel P. Goldberg

Appellate Case: 23-2550     Page: 24     Date Filed: 08/31/2023 Entry ID: 5312247