**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

————————————

No. 23-2550

————————————

**UNITED STATES OF AMERICA,**

Appellee,

v.

**KENDRA KINGSBURY,**

Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION
HONORABLE STEPHEN R. BOUGH, DISTRICT JUDGE

————————————

**BRIEF FOR THE UNITED STATES**

————————————

TERESA A. MOORE
  United States Attorney

DAVID WAGNER
  Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, 5th Floor
Kansas City, Missouri  64106
Telephone:  (816) 426-3122

*Attorneys for Appellee*

## <u>SUMMARY OF THE CASE</u>

Kendra Kingsbury pleaded guilty to two counts of willful retention of documents relating to the national defense, in violation of 18 U.S.C. § 793(e), and the district court sentenced her to 46 months' imprisonment. She now appeals her sentence, arguing for the first time that the district court should not have applied a Sentencing Guidelines enhancement for abuse of a position of public trust.

The district court did not plainly err by applying the abuse-of-trust enhancement in § 3B1.3 of the Guidelines. Kingsbury worked as an FBI analyst and collected hundreds of classified documents in her home. She indisputably abused a position of public trust in a manner that significantly facilitated the commission or concealment of her crimes. Kingsbury is not exempt from the enhancement under a carveout that applies when the base offense level already includes an abuse of trust. Kingsbury's base offense level, set by § 2M3.3 of the Guidelines, does not include an abuse of trust, and to the extent relevant, Kingsbury's offense of conviction does not include an abuse of trust either.

Oral argument is unnecessary.

-i-

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE.......................................................................... i

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF THE ISSUE....................................................................1

STATEMENT OF THE CASE ....................................................................2

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT

The district court did not commit reversible plain error by applying the abuse-of-trust enhancement in § 3B1.3 of the Guidelines ..............................7

A.      Standard of Review ......................................................................7

B.      Discussion......................................................................................7

    1.      Kingsbury indisputably qualifies for the abuse-of-trust enhancement under the first sentence of § 3B1.3 ......................8

    2.      The carveout in the second sentence of § 3B1.3 does not exempt Kingsbury from the abuse-of-trust enhancement..........9

    3.      Any error was not plain.............................................................17

CONCLUSION.............................................................................................18

CERTIFICATE OF COMPLIANCE............................................................19

CERTIFICATE OF SERVICE .....................................................................20

Appellate Case: 23-2550     Page: 3     Date Filed: 11/06/2023 Entry ID: 5333324

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Greer v. United States*, 141 S.Ct. 2090 (2021)............................................7, 8

*United States v. Aquino*, 555 F.3d 124 (3d Cir. 2009) ..................................14

*United States v. Bracciale*, 374 F.3d 998 (11th Cir. 2004) .......... 1, 11, 12, 14

*United States v. Claymore*, 978 F.2d 421 (8th Cir. 1992) ............................15

*United States v. Ford*, 21 F.3d 759 (7th Cir. 1994)...................................1, 16

*United States v. Jenkins*, 578 F.3d 745 (8th Cir. 2009)................................13

*United States v. Josleyn*, 99 F.3d 1182 (1st Cir. 1996) ................................12

*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990).............. 1, 9, 10, 11, 15

*United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010)............................14

*United States v. Morris*, 955 F.3d 722 (8th Cir. 2020)...................................7

*United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998).............................13

*United States v. Olano*, 507 U.S. 725 (1993) ...............................................17

*United States v. Poitra*, 60 F.4th 1098 (8th Cir. 2023) .................................17

*United States v. Queen*, 4 F.3d 925 (10th Cir. 1993) ...................................13

*United States v. Waldner*, 580 F.3d 699 (8th Cir. 2009) ..............................15

## Statutes

18 U.S.C. § 793........................................................................ i, 4, 10, 11, 14

Appellate Case: 23-2550     Page: 4     Date Filed: 11/06/2023 Entry ID: 5333324

18 U.S.C. § 798...................................................................... 10, 11

50 U.S.C. § 783...................................................................... 10, 11

**Sentencing Guidelines**

U.S.S.G. § 2A3.1 ........................................................................12

U.S.S.G. § 2A3.2 ........................................................................12

U.S.S.G. § 2A3.3 ........................................................................12

U.S.S.G. § 2A3.4 ........................................................................12

U.S.S.G. § 2B1.1 .................................................................. 12, 13

U.S.S.G. § 2C1.1.........................................................................12

U.S.S.G. § 2C1.2.........................................................................12

U.S.S.G. § 2C1.3.........................................................................12

U.S.S.G. § 2C1.5.........................................................................12

U.S.S.G. § 2D1.1.........................................................................12

U.S.S.G. § 2E5.1.........................................................................12

U.S.S.G. § 2F1.1 .........................................................................11

U.S.S.G. § 2G1.3.........................................................................12

U.S.S.G. § 2G2.1.........................................................................12

U.S.S.G. § 2G2.6.........................................................................12

U.S.S.G. § 2H1.1 ........................................................................12

U.S.S.G. § 2M3.3................................................................... *passim*

Appellate Case: 23-2550     Page: 5     Date Filed: 11/06/2023 Entry ID: 5333324

U.S.S.G. § 2P1.1 ................................................................12

U.S.S.G. § 2P1.2 ................................................................12

U.S.S.G. § 2T1.4 ................................................................12

U.S.S.G. § 3B1.3 ............................................................ *passim*

Appellate Case: 23-2550    Page: 6    Date Filed: 11/06/2023 Entry ID: 5333324

## STATEMENT OF THE ISSUE

Whether the district court committed reversible plain error by applying the abuse-of-trust enhancement in § 3B1.3 of the Guidelines.

## Cases

*United States v. Bracciale*, 374 F.3d 998 (11th Cir. 2004)

*United States v. Ford*, 21 F.3d 759 (7th Cir. 1994)

*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990)

Appellate Case: 23-2550    Page: 7    Date Filed: 11/06/2023 Entry ID: 5333324

## **STATEMENT OF THE CASE**

Over her 13-year career as an intelligence analyst with the FBI, Kendra Kingsbury accumulated hundreds of classified documents in her home. Once discovered, that conduct led to convictions for the crime of willful retention of documents relating to the national defense, and a 46-month prison sentence.

Kingsbury began working for the FBI in 2004. (PSR ¶ 3; Sent. Tr., at 12.)[1] She was based in the FBI's Kansas City field office and worked on various squads including illegal drug trafficking, violent crime, violent gangs, and counterintelligence. (PSR ¶ 3; Sent. Tr., at 10.) Kingsbury maintained a TOP SECRET//SCI (Sensitive Compartmented Information) security clearance. (Sent. Tr., at 12-13; R. Doc. 1, at 2.) To maintain that security clearance, Kingsbury received annual trainings on how to handle classified information, and she signed various employment agreements that described the importance of properly handling classified information and the consequences of mishandling it. (Sent. Tr., at 13.) Kingsbury was entrusted with access to classified government documents and was able to access such

---

[1] "PSR" refers to the presentence investigation report. (R. Doc. 36.) "Sent. Tr." refers to the transcript of the sentencing hearing. (R. Doc. 48.)

-2-

documents in a secure area of the Kansas City field office and through secure government computer systems. (Plea Tr., at 11-12, 15.)[2]

In late 2017, Kingsbury reported to her superiors that she had found classified documents in her home. (PSR ¶ 9.) Kingsbury later explained that she self-reported this information because she believed the FBI was surveilling her. (Sent. Tr., at 17, 35.)

A security officer from the Kansas City field office accompanied Kingsbury to her house to retrieve the documents. (PSR ¶ 9; Sent. Tr., at 14.) Once at Kingsbury's home, Kingsbury gave the security officer a yellow envelope, which she claimed contained the classified documents. (PSR ¶ 12.) The security officer also noticed some FBI emails in a bathroom adjacent to Kingsbury's home office. (PSR ¶ 13.) The security officer and Kingsbury sorted through the documents in the bathroom, as well as through additional documents in a case Kingsbury produced. (PSR ¶ 13.) The security officer found in the bathroom and in the case a number of classified documents market SECRET. (PSR ¶ 13.)

The FBI subsequently conducted two more searches of Kingsbury's home, as well as a search of her work area in the Kansas City field office.

---

[2] "Plea Tr." refers to the transcript of Kingsbury's change-of-plea hearing. (R. Doc. 31.)

Appellate Case: 23-2550     Page: 9     Date Filed: 11/06/2023 Entry ID: 5333324

(Sent. Tr., at 8-10.) Altogether, the FBI found approximately 20,000 documents, the majority of which were considered sensitive because they were designated for official use or law enforcement use or contained reports from confidential sources. (Sent. Tr., at 11-12, 32.) Among the 20,000 documents were 386 classified documents. (Sent. Tr., at 11.)

As part of its efforts to determine why Kingsbury had accumulated so many classified documents in her home, the FBI reviewed toll record information from Kingsbury's home phone and cell phone. (Sent. Tr., at 17-19.) These records revealed that Kingsbury's home phone and cell phone had been in contact with seven different individuals who were subjects or suspects in FBI counterterrorism investigations. (Sent. Tr., at 19-20; R. Doc. 38, at 4-5.) Some of the documents Kingsbury possessed, including some of the classified documents, contained information about some of those seven individuals. (Sent. Tr., at 19, 23-24.) The FBI asked Kingsbury about the calls, but she denied knowing anything about them. (Sent. Tr., at 21-23, 28.) The FBI was never able to determine why Kingsbury's phones were in contact with individuals implicated in counterterrorism investigations. (Sent. Tr., at 24.)

Kingsbury was charged in 2021 with two counts of willful retention of documents relating to the national defense, in violation of 18 U.S.C. § 793(e).

Appellate Case: 23-2550    Page: 10    Date Filed: 11/06/2023 Entry ID: 5333324

(R. Doc. 1.) Count One charged Kingsbury with retaining, at her house, 10 specific documents from the FBI, which related to the national defense and were classified as SECRET. (R. Doc. 1, at 5-6.) Count Two charged Kingsbury with retaining 10 specific documents from another unnamed government agency, which also related to the national defense and were also classified as SECRET. (R. Doc. 1, at 6-7.) Documents are classified as SECRET "if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security." (R. Doc. 1, at 2.) Kingsbury pleaded guilty without a plea agreement. (Plea Tr.)

At sentencing, the district court calculated an advisory Sentencing Guideline range of 46 to 57 months' imprisonment. (Sent. Tr., at 4.) That calculation included a two-level enhancement under § 3B1.3 of the Guidelines for abusing a position of public trust. (PSR ¶ 32.) Kingsbury did not object to the enhancement. The Government argued for a sentence of 57 months, and Kingsbury requested probation. (Sent. Tr., at 44, 62.) The district court sentenced Kingsbury to 46 months in prison, followed by three years of supervised release. (Sent. Tr., at 68.)

Appellate Case: 23-2550   Page: 11   Date Filed: 11/06/2023 Entry ID: 5333324

# SUMMARY OF THE ARGUMENT

The district court correctly applied the abuse-of-trust enhancement in § 3B1.3 of the Guidelines. Kingsbury does not dispute that she abused a position of public trust in a manner that significantly facilitated the commission or concealment of her crimes. She argues only that she should be exempt from the enhancement due to a carveout that applies when an abuse of trust is included in the base offense level.

Kingsbury's base offense level did not, however, include an abuse of trust. The relevant Guidelines provision, § 2M3.3, sets the base offense level for a variety of crimes, some of which do not require any aspect of abuse of trust. To the extent relevant, Kingsbury's offense of conviction did not require an abuse of trust either. The fact that Kingsbury committed her crimes in a way that abused a position of trust is what qualifies her for the enhancement; it does not exempt her. This Court should affirm.

-6-

# ARGUMENT

**The district court did not commit reversible plain error by applying the abuse-of-trust enhancement in § 3B1.3 of the Guidelines.**

## A. *Standard of Review*

Kingsbury did not object below to the abuse-of-trust enhancement, so this Court reviews for plain error. *See United States v. Morris*, 955 F.3d 722, 724 (8th Cir. 2020). Kingsbury must "show (1) an error; (2) that is plain; and (3) that affects substantial rights," and even if she makes these showings, this Court may afford relief "only if [the error] seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). Kingsbury "has the burden of establishing each of the four requirements for plain-error relief," and "[s]atisfying all four prongs of the plain-error test is difficult." *Greer v. United States*, 141 S.Ct. 2090, 2097 (2021) (quotation omitted).

## B. *Discussion*

The district court did not err, plainly or otherwise, by applying the abuse-of-trust enhancement in § 3B1.3 of the Guidelines. The first sentence of that section calls for a two-level increase in the offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of

the offense." § 3B1.3. The second sentence contains a carveout providing that "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id.* The commentary to § 3B1.3 explains that "'[p]ublic or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." § 3B1.3 cmt. n.1. Individuals who abuse positions of trust "generally are viewed as more culpable." U.S.S.G. § 3B1.3 cmt. background.

> 1. *Kingsbury indisputably qualifies for the abuse-of-trust enhancement under the first sentence of § 3B1.3.*

Kingsbury concedes that she abused a position of public trust in a manner that significantly facilitated the commission or concealment of her offenses. (Kingsbury Brf., at 6, 8-9.) The FBI entrusted Kingsbury with a TOP SECRET//SCI security clearance and gave her "access to sensitive government materials, including information relating to the national defense that was closely held by the U.S. government and other classified documents and materials." (Plea Tr., at 9, 11, 15.) Kingsbury was afforded a sufficient degree of professional discretion in handling classified materials such that she was able to, undetected, remove hundreds of classified documents from secure facilities and store them in her home. (Plea Tr., at 10, 12, 15.) It is undisputed

Appellate Case: 23-2550    Page: 14    Date Filed: 11/06/2023 Entry ID: 5333324

that Kingsbury abused a position of public trust in a manner that significantly facilitated the commission or concealment of her offenses.

2. *The carveout in the second sentence of § 3B1.3 does not exempt Kingsbury from the abuse-of-trust enhancement.*

The carveout in the second sentence of § 3B1.3, which says that "[t]his adjustment may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic," does not exempt Kingsbury from the enhancement. As demonstrated by this Court's decision in *United States v. Lange*, 918 F.2d 707 (8th Cir. 1990), the focus of the inquiry is the base offense level (no specific offense characteristic is implicated in this case), and whether the base offense level already incorporates an abuse of trust. Kingsbury's base offense level does not.

In *Lange*, the district court had refused to apply the abuse-of-trust enhancement to a postal employee who stole money from express and certified mail "because it believed that in all postal theft cases, trust is built into the guidelines and the statute and cannot be added to it." *Id.* at 709-10 (quotation omitted). This Court agreed that "the underlying criminal statute [did] assume an abuse of public trust, because it specifically addresse[d] theft of government mail 'entrusted' to a postal employee," but this Court interpreted the carveout in § 3B1.3 differently than the district court had. *Id.* at 710. "The enhancement is not to be applied when the base offense level or

-9-

a specific offense characteristic takes into account abuse of public trust." *Id.* The base offense level at issue in *Lange* applied to any kind of theft and was unaffected by the statute of conviction; therefore, the carveout did not apply. *See id.*; *see also id.* at 712 (Heaney, J., dissenting) ("The majority correctly notes that neither the base offense level nor specific offense characteristic for theft take into account abuse of public trust.).

Here, Kingsbury's base offense level, which was set by § 2M3.3 of the Guidelines, does not take into account an abuse of trust. (PSR ¶ 29.) Section 2M3.3 does not mention abuse of trust. It establishes the base offense level for a number of crimes, including 18 U.S.C. § 793(d) (transmission or retention of national defense material by someone in lawful possession), 18 U.S.C. § 793(e) (transmission or retention of national defense material by someone not in lawful possession—the crime Kingsbury was convicted of), 18 U.S.C. § 798 (disclosure of classified cryptographic information), and 50 U.S.C. § 783 (communication of classified information by a government employee, or receipt of classified information by a foreign agent). *See* § 2M3.3, cmt. statutory provisions.

Some of the offenses for which § 2M3.3 provides the base offense level arguably incorporate some notion of abuse of trust because they apply specifically to government employees or individuals lawfully entrusted with

Appellate Case: 23-2550     Page: 16     Date Filed: 11/06/2023 Entry ID: 5333324

sensitive information. *See* 18 U.S.C. § 793(d) (individuals with lawful possession of national defense material); 50 U.S.C. § 783(a) (government employees or employees of corporations with stock owned by the United States).

However, other offenses do not incorporate any aspect of abuse of trust because they apply to anyone, *see* 18 U.S.C. § 793(e) (anyone with unauthorized possession of national defense material); 18 U.S.C. § 798 (anyone who communicates classified cryptographic information), or specifically apply to foreign agents, *see* 50 U.S.C. § 783(b) (agents or representatives of foreign governments who receive classified information from government employees). Defendants can violate these statutes without committing any abuse of a position of trust.

Because § 2M3.3 establishes the base offense level for a variety of crimes, irrespective of whether they include any abuse of trust, the base offense level does not account for an abuse of trust. *See Lange*, 918 F.2d at 710; *see also United States v. Bracciale*, 374 F.3d 998, 1005-06 (11th Cir. 2004) (holding that abuse of trust was not included in the base offense level set by former § 2F1.1(a) of the Guidelines, because that provision set the base offense level for numerous types of fraud, regardless of whether they involved abuse of trust). The district court's application of the abuse-of-trust

-11-

enhancement properly reflected that Kingsbury's conduct was more culpable than that of other individuals whose base offense levels are also set by § 2M3.3, but whose conduct does not involve an abuse of trust. *See* U.S.S.G. § 3B1.3 cmt. background (explaining that individuals who abuse their positions of trust "generally are viewed as more culpable"); *Bracciale*, 374 F.3d at 1010 (explaining that "the breach of fiduciary duty element of Bracciale's wire fraud was not captured in the fraud guideline that established a base offense level of six for a variety of fraud crimes but was captured only in the abuse-of-trust enhancement").

Furthermore, the commentary to a number of the offense conduct sections in Chapter Two of the Guidelines specifies when the abuse-of-trust enhancement in § 3B1.3 should not be applied.[3] The commentary to § 2M3.3 does not contain such a prohibition, which further confirms that the abuse-of-trust enhancement can be applied when that section sets the base offense level. *See United States v. Josleyn*, 99 F.3d 1182, 1198-99 (1st Cir. 1996) (observing that "the Sentencing Commission took pains throughout the Guidelines to

---

[3] *See* U.S.S.G. §§ 2A3.1 cmt. n.3(B); 2A3.2 cmt. n.2(B); 2A3.3 cmt. n.4; 2A3.4 cmt. n.4(B); 2B1.1 cmt. n.7, n.8(E)(i), n.11, n.16(C); 2C1.1 cmt. n.6; 2C1.2 cmt. n.4; 2C1.3 cmt. n.1; 2C1.5 cmt. n.1; 2D1.1 cmt. n.23; 2E5.1 cmt. n.5; 2G1.3 cmt. n.2(B); 2G2.1 cmt. n.5(B); 2G2.6 cmt. n.2(B); 2H1.1 cmt. n.5; 2P1.1 cmt. n.3; 2P1.2 cmt. n.2; 2T1.4 cmt. n.2.

-12-

specify the circumstances in which courts should not impose enhancements for abuse of trust"). Of course, § 2M3.3 does not contain any specific directive to apply the abuse-of-trust enhancement, but the lack of specific direction does not prevent application of the enhancement. *See, e.g.*, *United States v. Jenkins*, 578 F.3d 745, 747 n.2, 749, 753 (8th Cir. 2009) (affirming application of the enhancement where the base offense level was set under the 2001 version of § 2B1.1(a), which contained no specific directive to apply the enhancement).

It is true that when considering an enhancement under § 3B1.3, this Court has also apparently considered whether the particular offense of conviction, as opposed to the base offense level, categorically included an abuse of trust. *See United States v. O'Hagan*, 139 F.3d 641, 656 (8th Cir. 1998); *see also United States v. Queen*, 4 F.3d 925, 928 (10th Cir. 1993) (noting that courts have taken different approaches to this issue). However, *O'Hagan* rejected the argument as the defendant had framed it; the decision did not hold that the carveout in § 3B1.3 requires looking to the elements of the specific offense of conviction rather than the base offense level. *See O'Hagan*, 139 F.3d at 656.

Furthermore, where a Guidelines provision furnishes the base offense level for multiple different crimes, focusing on the particular offense of conviction would be inconsistent with the directive in § 3B1.3, which asks

-13-

whether an abuse of trust is included in the base offense level, not whether an abuse of trust is included in the offense of conviction. If the same base offense level applies both to a crime that inherently involves abuse of trust and one that does not, the base offense level necessarily does not account for an abuse of trust. *See United States v. Laurienti*, 611 F.3d 530, 556 (9th Cir. 2010) ("The enhancement is inapplicable only if the *base offense level* necessarily includes an abuse of trust, regardless whether the defendant's *offenses of conviction* include an abuse of trust."); *Bracciale*, 374 F.3d at 1005-06 & n.9 (holding that the base offense level did not include an abuse of trust notwithstanding breach of fiduciary duty was treated as an element of the underlying fraud offense).

Even if the carveout inquiry depended upon the offense of conviction, the carveout would still not apply here. The statute Kingsbury violated, 18 U.S.C. § 793(e), applies to anyone who has unauthorized possession of material relating to the national defense, willfully retains it, and fails to deliver it to an official entitled to receive it. *See United States v. Aquino*, 555 F.3d 124, 130-31 (3d Cir. 2009) (listing the elements of a violation of § 793(e)). The offense is not limited to individuals, like Kingsbury, who were lawfully entrusted with accessing national defense information. *See, e.g.*, *id.* at 125-26 (defendant convicted under § 793(e) for retaining classified information

received from another individual who had access to a restricted government database). Kingsbury's offense addressed her willful retention of documents relating to the national defense, and the abuse-of-trust enhancement addressed the fact that she abused a position of trust to commit the crimes. *See United States v. Waldner*, 580 F.3d 699, 707 (8th Cir. 2009) (finding the abuse-of-trust enhancement correctly applied where the enhancement and the underlying crime penalized distinct aspects of a defendant's conduct).

Kingsbury argues that in this case, "the abuse of trust was so central to the crime that the abuse was included in the base offense level." (Kingsbury Brf., at 10, quotations omitted). She bases her argument upon a sentence from *United States v. Claymore*: "If an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." 978 F.2d 421, 423 (8th Cir. 1992) (citing *Lange*, 918 F.2d at 708-09). Kingsbury appears to be suggesting that the § 3B1.3 enhancement cannot apply because an abuse of trust was central to the particular way she committed her crimes.

This argument is meritless. The fact that Kingsbury committed her crimes in a way that abused a position of trust is what qualifies her for the § 3B1.3 enhancement. The enhancement only applies when a defendant abused a position of trust "in a manner that significantly facilitated the

-15-

commission or concealment of the offense." § 3B1.3. A defendant is not exempted from the enhancement simply because the abuse of trust was central to the particular way he or she committed the crimes. *See United States v. Ford*, 21 F.3d 759, 766 (7th Cir. 1994) (rejecting the defendants' argument that the abuse-of-trust enhancement should not apply where their particular RICO offenses involved an abuse of trust, because "that fact is precisely the reason that the enhancement is appropriate in their case"). Accepting Kingsbury's position would effectively render § 3B1.3 self-nullifying—the first sentence of the section would be negated by the second.

The operative part of the quote from *Claymore* that Kingsbury relies upon is the phrase "that the abuse would be included in the base offense level." The base offense level under § 2M3.3 is the same for all defendants who commit the crimes falling within its purview, whether they abused a position of trust or not. The base offense level therefore does not include an abuse of trust. Absent application of the enhancement in § 3B1.3, Kingsbury's Guidelines range would not have accounted for her abuse of trust. The district court correctly applied the enhancement to ensure Kingsbury's Guidelines range reflected her abuse of trust, and corresponding heightened culpability.

Appellate Case: 23-2550     Page: 22     Date Filed: 11/06/2023 Entry ID: 5333324

### 3. *Any error was not plain.*

Finally, to the extent the district court erred at all by applying the § 3B1.3 enhancement, the error was not plain. *See United States v. Olano*, 507 U.S. 725, 734 (1993) ("Plain is synonymous with clear or, equivalently, obvious." (quotations omitted)). Kingsbury identifies no case holding that the abuse-of-trust enhancement cannot apply when § 2M3.3 sets the base offense level. She therefore fails to satisfy her burden to show plain error. *See United States v. Poitra*, 60 F.4th 1098, 1101 (8th Cir. 2023) ("Absent authority directly supporting [the defendant's] position, there was no plain error.").

Appellate Case: 23-2550    Page: 23    Date Filed: 11/06/2023 Entry ID: 5333324

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm Kingsbury's sentence.

Respectfully submitted,

TERESA A. MOORE
  United States Attorney

By    /s/ *David Wagner*

DAVID WAGNER
  Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri  64106
Telephone:  (816) 426-3122

*Attorneys for Appellee*

-18-

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,423 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 software in 14-point, Times New Roman font. Furthermore, the document has been determined to be virus-free in compliance with Eighth Circuit Rule 28A(h).

_/s/ David Wagner_
David Wagner
Assistant United States Attorney

Appellate Case: 23-2550    Page: 25    Date Filed: 11/06/2023 Entry ID: 5333324

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. A paper copy will be served on participants in the case by U.S. Mail, postage prepaid, within five days of the Court's notice that the brief has been reviewed and filed.

I hereby certify that a copy of the Government's brief was mailed on November ___, 2023, to:

> Daniel P. Goldberg
> Assistant Federal Public Defender
> 1000 Walnut, Suite 600
> Kansas City, Missouri  64106
>
> *Attorney for Appellant*

> _/s/ *David Wagner*_____
> David Wagner
> Assistant United States Attorney

-20-