IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

No. 23-2550
_____

**UNITED STATES OF AMERICA,**
Appellee,

v.

**KENDRA KINGSBURY**
Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**APPELLANT'S REPLY BRIEF**
_____

<div style="margin-left: 40%;">
LAINE CARDARELLA
Federal Public Defender
Western District of Missouri

Daniel P. Goldberg
Appellate Attorney
1000 Walnut, Suite 600
Kansas City, MO 64106
(816) 471-8282

COUNSEL FOR APPELLANT
</div>

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

REPLY ARGUMENT ..................................................................................... 1

    Did the district court plainly err by increasing Ms. Kingsbury's offense level by two levels under U.S.S.G. § 3B1.3 because her abuse of trust was so central to her crimes that it was included in the base offense level? .............. 1

    I.   The government's argument disregards binding Eighth Circuit case law, as well as the district court's central findings and conclusions. ... 1

    II.  The government cannot prevail on this issue by relying on other circuits' case law, or its novel textual and policy arguments already resolved by this Circuit. ....................................................................... 9

    III. This error constitutes plain error. ...................................................... 12

CONCLUSION .............................................................................................. 14

CERTIFICATE OF COMPLIANCE ............................................................. 15

CERTIFICATE OF SERVICE ....................................................................... 15

Appellate Case: 23-2550  Page: 2  Date Filed: 11/21/2023 Entry ID: 5337804

# TABLE OF AUTHORITIES

## Cases

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) .............................. 12, 13

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) .............................. 12, 13

*United States v. Baker*, 82 F.3d 273 (8th Cir. 1996) ...................................... passim

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) ............................................ 9

*United States v. Claymore*, 978 F.2d 421 (8th Cir. 1992) ..................................... 2, 7

*United States v. Craddock*, 593 F.3d 699 (8th Cir. 2010) .......................................... 9

*United States v. Garfinkel*, 29 F.3d 1253 (8th Cir. 1994) ..................................... 7, 8

*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990) .......................................... 7, 8

*United States v. Malloy,* 614 F.3d 852 (8th Cir. 2010) ............................................ 10

*United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998) .............................. 4, 5, 12

*United States v. Olano*, 507 U.S. 725 (1993) ......................................................... 13

*United States v. Smith*, 516 F.3d 473 (6th Cir. 2008) ........................................... 3, 4

*United States v. Waldner*, 580 F.3d 699 (8th Cir. 2009) .............................. 3, 4, 12

## Statutes

18 U.S.C. § 793 .......................................................................................................... 6

## Guidelines

U.S.S.G. § 2M3.3 ............................................................................... 10, 11, 13

U.S.S.G. § 3B1.3 .......................................................................................... passim

# REPLY ARGUMENT

**Did the district court plainly err by increasing Ms. Kingsbury's offense level by two levels under U.S.S.G. § 3B1.3 because her abuse of trust was so central to her crimes that it was included in the base offense level?**

By asking it to overlook three flaws in its argument, the government asks too much from this Court. *First*, the government's argument requires this panel to do the one thing it cannot do: overrule binding Eighth Circuit case law interpreting U.S.S.G. § 3B1.3. *Second*, the government wants this Court to disregard the district court's relevant findings, which are essential to understanding whether the court erred in applying the § 3B1.3 enhancement under this Court's applicable "fact intensive" test. *Third*, and finally, the government seeks to avoid binding case law establishing that Ms. Kingsbury's demonstration of Guidelines error ordinarily requires this Court to correct the error on plain error review.

Because affirmance is not a viable option for this Court based on this series of missteps by the government, this Court must reverse.

I. <u>The government's argument disregards binding Eighth Circuit case law, as well as the district court's central findings and conclusions.</u>

This appeal boils down to what § 3B1.3 means when it says "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." The government's argument for affirmance rests almost exclusively on other circuits' holdings interpreting this text (the 1st, 3rd, 7th, 9th, 10th, and 11th circuits). It does so because Eighth Circuit

1

case law contradicts its position that courts should not look to the "particular way" the crime was committed in determining if § 3B1.3 applies, but instead should only look "categorically" to the Guideline provision. Gov't br, at 13-15.

Specifically, for 30 plus years, this Court has interpreted § 3B1.3's carveout language to mean, "*in other words*, '[i]f an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." *United States v. Baker*, 82 F.3d 273, 277 (8th Cir. 1996), quoting *United States v. Claymore*, 978 F.2d 421, 423 (8th Cir. 1992) (emphasis added).

In reversing and remanding the application of a two-level enhancement under §3B1.3 in *Baker*, this Court concluded that the application of the "so central to the crime" test is "*fact intensive*", thereby rejecting the government's categorical test. 82 F.3d at 278 (emphasis added). Despite *Baker* being the centerpiece for Ms. Kingsbury's argument for reversal, the government fails to mention it in its brief. If it had any argument as to why *Baker* is not controlling, the government would have already made it.

After announcing its argument that this Court should only look "categorically" to this base offense level, the government later admits that Eighth Circuit case law does not support it: "It is true that when considering an enhancement under § 3B1.3, this Court has also apparently considered whether the

2

particular offense of conviction, as opposed to the base offense level, categorically included an abuse of trust." Gov't br, at 13. But the truth is that *no* Eighth Circuit case suggests that courts must categorically look at the "particular offense of conviction" in isolation, either. Rather, as highlighted above, the holding in *Baker* mandates the contrary based on its "fact intensive" test. 82 F.3d at 278.

There are other Eighth Circuit cases cited in the opening brief demonstrating this Circuit looks to the defendant's specific conduct when determining if the § 3B1.3 enhancement applies. In affirming the application of § 3B1.3 because "this enhancement is not duplicative of [d]efendant's base offense level", this Court said: "But *in this instance*, [t]he abuse-of-trust enhancement and the underlying offenses penalize distinct aspects of Waldner's conduct and distinct harms" of perjury and defrauding creditors. *United States v. Waldner*, 580 F.3d 699, 707 (8th Cir. 2009) (cleaned up and emphasis added)), citing *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008).

Right off the bat, the "in this instance" phrase alleviates any doubt this Court is engaging in a fact intensive inquiry unique to that case, which is confirmed by its detailed analysis. That fact intensive inquiry is proper because "the sentencing commission has disclaimed any interest in serially punishing defendants for abusing a position of trust" based on the carveout provision in U.S.S.G. § 3B1.3.

3

*Smith*, 516 F.3d at 476. Again, this Court's analysis of *Waldner* is the opposite of the government's suggested categorical approach.

This Court engaged in similar analysis in *United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998), when concluding the § 3B1.3 enhancement was proper because the defendant's abuse of trust was not "already included in the offense of securities fraud itself under the misappropriation theory." *Id*. at 656. While the government maintains that *O'Hagan* supports the conclusion that "the base offense level" alone was dispositive to the analysis, Gov't br. 13, *O'Hagan* looked to much more.

This Court looked not only to the crime—it also examined the granular theory of conviction ("misappropriation"), and the specific way Mr. O'Hagan committed his crimes (as a partner at a law firm). *Id*. at 656. And critically, this Court concluded that the breach of trust was divisible from the crime because "a secretary or other employee" at the law firm "could have breached a duty to the firm and violated the securities laws under the misappropriation theory without abusing a position of special trust." *Id*. This is not the categorical analysis proposed by the government.

As already explained in the opening brief, the same analysis of *Waldner* and *O'Hagan* must be applied in Ms. Kingsbury's case in determining if the § 3B1.3 enhancement was proper. But unlike in *Waldner* or *O'Hagan*, there is no daylight

4

between Ms. Kingsbury's underlying crime and the abuse of trust. They are inextricably intertwined for the reasons explained in the opening brief, and the government does not meaningfully maintain otherwise. The closest the government comes is one sentence of analysis: "Kingsbury's offense addressed her willful retention of documents relating to the national defense, and the abuse-of-trust enhancement addressed the fact that she abused a position of trust to commit the crimes." Gov't br, pg. 15. But this analysis fails to address whether the "abuse of trust is so central to the crime that the abuse would be included in the base offense level", or specifically how Ms. Kingsbury could have retained the "TOP SECRET" documents without the abuse of trust. *Baker*, 82 F.3d at 277.

Specifically, the government fails to dispute that Ms. Kingsbury's offense involved a breach of public trust that would have been impossible without the FBI's trust and faith in her to have access to our nation's most top-secret documents. *See* Plea Tr, at 8-15. Again, in contrast to *O'Hagan*, the very nature of Ms. Kingsbury's crimes involved a breach of the FBI's trust in granting her security clearance. *See O'Hagan*, 139 F.3d at 656 (concluding the breach of trust was separable from the crime because a secretary "could have breached a duty to the firm and violated the securities laws under the misappropriation theory without abusing a position of special trust"). And that breach of trust cannot meaningfully be divorced from her crimes like in *O'Hagan*. Thus, under *binding* Eighth Circuit

5

case law, the district court erred in its analysis, and its application of the § 3B1.3 enhancement.

The government suggests that "anyone" could have violated 18 U.S.C. § 793(e) without being "lawfully entrusted with accessing national defense information." Gov't br, pg. 14. But this contradicts the district court's detailed factual findings that not just "anyone" could have committed Ms. Kingsbury's crimes—an analysis that Ms. Kingsbury already set forth in her opening brief (and once again is ignored by the government). These findings cannot be so breezily disregarded under this Court's "fact intensive" test. *Baker*, 82 F.3d at 278.

Specifically, after reviewing the particular documents Ms. Kingsbury improperly brought home, the district court concluded "[i]t was all information that is designed to protect our country from terrorism." Sent Tr., at 65. The court further concluded that Ms. Kingsbury "pled guilty to taking home documents that shouldn't ever be outside the FBI." Sent Tr. at 67. Finally, the court found that because of her guilty plea, "You're never going to be within 100 yards of a secret document again, and so we don't have any thought that you're even going to do this again." Sent Tr. at 68.

Based on the district court's own findings regarding Ms. Kingsbury's offense, it is hard to imagine the court would have found "anyone" could have committed this crime *without* Ms. Kingsbury's abuse of trust in her position.

6

Rather, the court strongly indicated "the abuse of trust" was "so central to the crime that the abuse would be included in the base offense level." *Claymore*, 978 F.2d at 423; *Baker*, 82 F.3d at 277. This is why the lower court erred in applying the two-level enhancement of § 3B1.3.

Finally, the only substantively on-point case from this Circuit that the government relies on for its position—*United States v. Lange*, 918 F.2d 707 (8th Cir. 1990)—doesn't hold what it thinks it does. Gov't br, pg. 13 (suggesting this analysis focuses only on whether the crime "categorically included an abuse of trust."). Rather, a panel of this Circuit specifically relied on *Lange* to develop the governing test in this Circuit: "[i]f an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." *Claymore*, 978 F.2d at 423, citing *Lange*, 918 F.2d at 708-09. Had *Lange* adopted a categorical rule (as now urged by the government), it would have used words to that effect in its analysis—but again *Claymore* (and other subsequent cases from this Circuit) demonstrate to the contrary.

This Court has rejected a similar attempt by the government to rely on *Lange* in a way the law did not support it. In affirming the district court's refusal to apply the § 3B1.3 enhancement, this Court in *United States v. Garfinkel* rejected the government's reliance on *Lange* for the proposition that "the district court misinterpreted the scope of the guidelines." 29 F.3d 1253, 1261 (8th Cir. 1994).

7

Rather, this Court agreed with the defendant that "whether § 3B1.3 applies to his conduct is a *factual* determination." *Id*. (emphasis added). The government's failure to mention *Garfinkel* demonstrates a pattern of failing to engage binding Eighth Circuit case law.

In *Lange*, this Court concluded application of § 3B1.3 was proper because while the postal theft crime of conviction assumed an "abuse of public trust", the base offense level did not reflect that fact because "any theft is [base offense level] four." 918 F.3d at 710. That was problematic because the unique crime of postal mail theft "does not otherwise affect the base offense level or specific offense characteristic under the Sentencing Guidelines." *Id*. Subsequent Guidelines commentary also reflects this Court is correct that postal crimes are unique because they *always* require application of the enhancement. *See* § 3B1.3, cmnt. 2(A).

In stark contrast to *Lange*, Ms. Kingsbury's theft of "TOP SECRET" documents was obviously not postal mail theft, and it was not treated like any other theft crime as a base offense level 4, either. Instead, the specific nature of the offense caused her base offense level to be six times that, a 24, because she improperly took "TOP SECRET" documents. Simply put, *Lange* is not a basis to affirm because its holding does not support the government's argument.

8

II. **The government cannot prevail on this issue by relying on other circuits' case law, or its novel textual and policy arguments already resolved by this Circuit.**

The government's extremely heavy reliance on other circuits' case law is unhelpful to this Court for two reasons. First, it goes without saying this panel must follow binding Eighth Circuit case law on this issue, not cases from other circuits. *See United States v. Betcher,* 534 F.3d 820, 823–24 (8th Cir. 2008) ("[I]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."). To the extent the government wants this Circuit's case law to look like other circuits, it must file a petition for rehearing en banc to change the case law like any other litigant. *Id.*; *see also United States v. Craddock*, 593 F.3d 699, 702 (8th Cir. 2010) ("Even if we found this argument persuasive, we are without the authority to overrule the decisions of a prior panel of this circuit.").

Second, and perhaps more problematically, the government concedes there is a messy, active circuit split on this very issue. Gov't br, pg. 13. And it doesn't suggest what side of the fractured split this Court should now chose if it rejected the established rule in the Eighth Circuit. A circuit split over a Guidelines interpretation issue is a difficult area of the law to change, and normally takes intervention from either the Sentencing Commission or the Supreme Court.

In addition to relying on out-of-circuit case law, the government also tries to weave in novel textual and policy arguments for why this panel should decline to

9

follow prior Eighth Circuit case law. Again, these arguments should not be considered because this panel is without authority to consider them. But Ms. Kingsbury will nonetheless address these arguments because they support this Court's existing interpretation of § 3B1.3.

For example, the government string cites to other Guideline provisions in Chapter Two of the Guidelines that "specifies when the abuse-of-trust enhancement in § 3B1.3 should not be applied." Gov't br, pg. 12 & fn 3. Based on this, it argues because "the commentary to § 2M3.3 does not contain such a prohibition" this "further confirms" that § 3B1.3 categorically applies to § 2M3.3. *Id.* But that analysis commits a cardinal sin in its Guidelines interpretation.

Specifically, it would leave the carveout provision of § 3B1.3 "redundant", which this Court cannot do. *See United States v. Malloy,* 614 F.3d 852, 859 (8th Cir. 2010) ("The Guidelines must be interpreted, however, so no words are discarded as meaningless, redundant or surplusage."). Stated another way, if § 3B1.3 did not apply only to certain Guidelines provisions—see government's footnote 3—there would be no reason to for the carveout provision of § 3B1.3 to exist. Section 3B1.3 states "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic", and that provision must be given meaning to § 2M3.3. Otherwise, it would render it meaningless.

10

The government also argues that "where a Guidelines provision furnishes the base offense level for multiple different crimes, focusing on the particular offense of conviction would be inconsistent with the directive in § 3B1.3." Gov't br, pg. 13. But the government fails to explain why, textually, this Circuit's rule contradicts § 3B1.3. It fails to do so because this Circuit's rule is entirely consistent with the text by looking at the specifics of each case. Judge Loken already explained the meaning of § 3B1.3's carve out provision is, "in other words, if an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." *Baker*, 82 F.3d at 277. In any event, if the government believes cases like *Baker* (and other cases from this Circuit) were wrongly decided, it failed to make that argument, and thus has waived it in this appeal.

Finally, the government suggests a parade of horribles from applying the status quo to this appeal: "Accepting Kingsbury's position would effectively render § 3B1.3 self-nullifying—the first sentence of the section would be negated by the second." Gov't br, pg. 16. But Ms. Kingsbury is not arguing that § 3B1.3 should never apply, or that § 3B1.3 should never apply even to § 2M3.3. Ms. Kingsbury's position is instead that "[i]f an abuse of trust is so central to the crime that the abuse would be included in the base offense level, the increase under § 3B1.3 is not available." *Baker*, 82 F.3d at 277. If the abuse of trust is not "central

11

to the crime", then § 3B1.3 applies. Ms. Kingsbury has provided several examples of where that is exactly the case, like *O'Hagan* and *Waldner* above. But Ms. Kingsbury's case is not such a case, so § 3B1.3 does not apply.

A final reason exists to keep the status quo: the above rule in *Baker* has existed for decades, and has been a workable rule based on its application in this Circuit. Thus, this panel restating and applying the existing law will not be a significant event—it is the government's approach that would lurch this Circuit into uncertainty as to which other circuit's law to apply and how to apply it consistently in the future.

### III. This error constitutes plain error.

Ms. Kingsbury has analyzed why this error constitutes plain error based on Supreme Court and Eighth Circuit case law. Opening brief, pg. 15-18. Because it devotes only one paragraph to plain error analysis, the government fails to address the bulk of these arguments (and Ms. Kingsbury will not needlessly repeat them).

But the few things the government writes about plain error say a lot. In analyzing the plain error standard, the government fails to address how the Supreme Court requires plain error to be conducted in the context of the Guidelines in recent cases like *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) and *Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016). Rather, the

12

government's only Supreme Court case pertains to *trial* error in *United States v. Olano*, 507 U.S. 725, 734 (1993).

The Court has said the Guidelines' error should be treated differently for several reasons. "Unlike cases where trial strategies, in retrospect, might be criticized for leading to a harsher sentence, Guidelines miscalculations ultimately result from judicial error." *Rosales-Mireles*, 138 S. Ct. at 1908. The Supreme Court has also repeatedly noted that "'a remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does.'" *Id.*, quoting *Molina-Martinez*, 136 S.Ct. at 1348-49. "A resentencing is a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel." *Id*.

Additionally, in suggesting that no plain error occurred, the government states "Kingsbury identifies no case holding that the abuse-of-trust enhancement cannot apply when § 2M3.3 sets the base offense level." Gov't br, pg. at 17. But as demonstrated in her opening brief, for over thirty years this Court has flagged the relevant test for the application of § 3B1.3 based on the plain text of that Guideline, which clearly and obviously says "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." *Id*. In 1996, this Court vacated a defendant's sentence based on a similar type of error in the application of § 3B1.3. *Baker*, 82

13

F.3d at 277. These are the established authorities that directly support Ms. Kingsbury's position and demonstrate that plain error occurred.

Finally, because Ms. Kingsbury was sentenced to the low end of her incorrectly calculated Guidelines range (46 months' imprisonment), this plain error must be corrected because even the government does not dispute she would likely be sentenced to the low end of the correctly calculated Guidelines range again—37 months' imprisonment.

## CONCLUSION

Because the district court plainly erred in sentencing Ms. Kingsbury for the aforementioned reasons, it is respectfully submitted that this matter must be reversed and remanded for a new sentencing hearing.

Respectfully submitted,

s/Daniel P. Goldberg
Daniel P. Goldberg
1000 Walnut, Suite 600
Kansas City, MO 64106
(816) 471-8282

ATTORNEY FOR APPELLANT

14

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,304 words. I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 version 16, Times New Roman Font Face in Font size 14. Trend Micro Apex One Security Agent version 14 virus auto protection is enabled on all workstations to ensure all files are virus free.

<div style="text-align:right">

s/Daniel P. Goldberg
Daniel P. Goldberg

</div>

# CERTIFICATE OF SERVICE

It is hereby CERTIFIED that on this 21st day of November, 2023 the foregoing was electronically submitted with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

I hereby certify that one copy of the appellant's reply brief was mailed on this ____ day of November, 2023 to:

David Wagner
Assistant United States Attorney
400 E. 9th Street, 5th floor
Kansas City, MO 64106

Kendra Kingsbury, 46510-509
FCI Aliceville
PO Box 4000
Aliceville, AL 35442

<div style="text-align:right">

s/Daniel P. Goldberg
Daniel P. Goldberg

</div>

15